JS-6

cc: Bankruptcy Court

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE JOHN EMIL ALLE,<br><br>Debtor.<br>──────────────────<br>JOHN EMIL ALLE,<br><br>Appellant,<br><br>v.<br><br>EARL E. GALES, JR., et al.,<br><br>Appellees. | Case No. 2:20-cv-11116-MCS<br><br>Bankruptcy Case No. 2:13-bk-38801-SK<br><br>Adversary Case No. 2:14-ap-01146-SK<br><br>**ORDER AFFIRMING BANKRUPTCY COURT'S ORDERS** |

Appellant John Emil Alle appeals the Bankruptcy Court's Judgment entered on December 3, 2020 in favor of the Appellees. Alle also appeals from the Bankruptcy Court's Order Granting Appellees' Motion For Order Permitting Trial by Zoom Video Technology entered on August 25, 2020 (the "Zoom Trial Order") and (2) the Order Denying Motion For Order Allowing Defendant to Argue, At Trial, All Elements of Every Cause of Action in the First Amended Complaint (the "Mandate Order") entered on February 27, 2019. For the following reasons, the Court **AFFIRMS** the decisions of the Bankruptcy Court.

## I.  BACKGROUND

On December 5, 2013, John Emil Alle, debtor and Appellant here, filed a chapter 7 petition. *In re Alle*, 13-38801-SK (Bankr. C.D. Cal.). On March 7, 2014, Earl Gales, Jr., Starla Gales, Robert Oppenheim, and Lois Oppenheim, plaintiffs in the adversary proceeding and Appellees here, filed a complaint against Alle alleging three claims: 1) Defalcation under 11 U.S.C. § 523(a)(4), 2) Fraud under § 523(a)(2)(A), and 3) Embezzlement under § 523(a)(4). *Gales et al. v. Alle (In re Alle)*, Adv. Proc. No. 2:14-ap-01446-SK (Bankr. C.D. Cal.). The adversary action is based upon the below facts.

The Appellees and Alle formed Shadow Mountain Properties, LLC ("SMP") in January 2006. (Appellees' Excerpts of Record, Tab 5 at 00047 (AER 5:47), ECF No. 13-1.)[1] The purpose of SMP was to purchase and operate a rental property in Palm Desert, CA. (*Id.*) SMP purchased the Property from the Humiston Family Trust for the sum of $1,600,000.00. (*Id.*) The Appellees contributed $800,000 and Humiston took back a deed of trust in the amount of $800,000 for the remainder. (*Id.*)

Over the next several years, frustration between the parties developed, as Alle failed to provide requested operating reports and bank statements to the Appellees. (*See* AER Tab 4; Tab 11.) SMP also fell behind on payments on the deed of trust, and on August 19, 2011, Humiston instituted a non-judicial foreclosure process by recording a Notice of Default listing the default and the requisite reinstatement amount at that time of $12,478.33. (AER 5:47.) Although Alle knew of this action, and was in loan modification negotiations with Humiston, Appellees were unaware of the dire financial situation. (AER 5:49.) Alle's negotiations failed, and the foreclosure sale took place on December 22, 2011, with Humiston submitting a winning bid in the

---

[1] The "AER #:###" designation refers to the consecutively numbered pagination for the Appendix to Appellees' Brief – Excerpts of Record, with the first number being the Tab No. and the second number being the page number but without the leading zeros.

amount of $842,737.25. (AER 5:48–50.) Alle, notwithstanding his duties as Managing Member of SMP, did not notify Appellees that Humiston foreclosed on the property. (AER 11:147; 7:94.) For the next four months, despite the foreclosure, Alle continued to represent to Appellees that he was controlling SMP and attempting to rectify the financial woes. (*See generally* AER Tab 5; Tab 41.)

On November 9, 2012, Appellees filed a complaint against Alle in Los Angeles County Superior Court. (AER 34:510). On December 5, 2013, four days before the state action was to go to trial, Alle filed a chapter 7 petition. (*Id.*) On March 7, 2014, Appellees filed a nondischargeability complaint, initiating the adversary proceeding. (*Id.*)

In their adversary proceeding, the Appellees seek a determination that their claims against Alle were not dischargeable under Section 523 for fraudulent representations and omissions, fraud or defalcation while acting as a fiduciary, and embezzlement. (AER 39:602–12.) In September 2016, the bankruptcy court held a hearing on the Appellees' Motion for Summary Judgment resulting in a 40-page ruling granting the Appellees' claims for defalcation while acting in a fiduciary capacity and embezzlement (the "MSJ Ruling"). (*See* AER Tab 34.) Additionally, the bankruptcy court determined that Alle embezzled $94,473.64 in funds from Shadow Mountain between May 2009 and December 2011. (*See* AER 34:506–09.) The bankruptcy court entered judgment against Alle for $800,000.00, plus attorneys' fees and costs (the "Initial Judgment"). (*See* AER Tab 33.)

Alle then appealed the Initial Judgment to the BAP in the appeal designated as *Alle v. Gales (In re Alle)*, Case No. CC-16-1412 (B.A.P. 9th Cir. 2016). The BAP affirmed in part and reversed in part the Initial Judgment and remanded the matter for further proceedings. (AER 37:582.) The BAP found that the bankruptcy court's findings were inadequate to support the ultimate conclusion that there was a defalcation. Specifically, the BAP opined that the bankruptcy court needed to make a sufficient finding that Alle's state of mind satisfied the applicable standard or an

explicit finding that Alle's conduct caused the Appellees' damages. (AER 37:571.) The BAP further found that the bankruptcy court did not make sufficient findings to support the amount of damages awarded. (AER 37:580.)

After the remand by the BAP, Alle filed a motion seeking to set aside all of the bankruptcy court's prior determinations made in connection with its ruling on the MSJ and require the Appellees to prove every element of their complaint anew (the "Mandate Relief Motion"). (AER 40:654.) In response to this motion, the bankruptcy court ruled against Alle—finding its prior determinations were binding and the issues to be litigated at trial consisted of both the issues designated for remand by the BAP and the issues for which the bankruptcy court did not grant partial summary adjudication. (AER 38:590–600.) Further, the bankruptcy court found no valid exception to the law of the case doctrine and that the mandate rule applied, and accordingly entered the Mandate Order. (AER 4:35–36.)

On August 25, 2020, in light of the ongoing COVID-19 pandemic, the bankruptcy court entered an order that the action would proceed to a remote trial. (AER Tab 3.) At the hearing on the motion, the bankruptcy court stated that:

> based on the current pandemic, the district court's recent general orders that closed the district court because of the surging cases, the bankruptcy court's recent general order that closed the courthouse because of the surge in cases, it stands for all of these reasons stated, the Court find that there is good cause and compelling circumstances and exercises its discretion under FRCP 43(a) to order that this trial will proceed remotely.

(AER 46:1183.) The trial took place October 29–30, 2020. (AER 4:34.) But Alle elected not to participate in the trial, with both Alle and his counsel filing court-ordered declarations indicating an understanding of the consequences of not participating in the trial. (AER Tab 21; Tab 22.)

On December 3, 2020, after the remote trial and post-trial motion practice, the bankruptcy court entered the Judgment in favor of the Appellees in the amount of

$1,377,563.46 as to Mr. and Mrs. Gales and $740,606.77 as to Mr. and Mrs. Oppenheim. (AER 2:25–26.) This appeal followed.

## II.    QUESTIONS PRESENTED ON APPEAL[2]

1. Whether the Bankruptcy Court abused its discretion by entering the Zoom Trial Order?
2. Whether the Bankruptcy Court committed error by entering the Mandate Order?
3. Whether the Bankruptcy Court erred by entering the Judgment under 11 U.S.C. § 523(a)?

## II.    STANDARD OF REVIEW

"Findings of fact of the bankruptcy court are reviewed for clear error, and conclusions of law are reviewed de novo. Mixed questions of law and fact are reviewed de novo." *Harkey v. Grobstein (In re Point Ctr. Fin., Inc.)*, 957 F.3d 990, 995 (9th Cir. 2020) (citations omitted). The bankruptcy court's "findings of fact are accorded considerable deference and are only clearly erroneous if we are left with a definite and firm conviction a mistake has been committed." *Nichols v. Marana Stockyard & Livestock Mkt., Inc. (In re Nichols)*, 618 B.R. 1, 5 (9th Cir. B.A.P. 2020). A reviewing court may affirm a bankruptcy court's decision "on any ground fairly supported by the record." *In re Warren,* 568 F.3d 1113, 1116 (9th Cir. 2009).

## III.    DISCUSSION

Alle presents thirteen issues on appeal, which can be interpreted as falling within three separate categories of error: first, the bankruptcy court erred by ordering the trial to proceed by Zoom, second, the bankruptcy court erred by not requiring Appellees to prove every element of their claims at trial, and third, the bankruptcy court erred by granting judgment against Alle. (Opening Br. 1–2, ECF No. 10.) The Court addresses each issue in turn.

---

[2] Appellant stated thirteen issues on appeal, however the Court has found that the key issues can be distilled down to three questions. (*See* Opening Br. 1–2, ECF No. 10.)

### A. Holding the Trial by Remote Technology Was Permissible

First, Alle appeals the bankruptcy court's issuance of the Zoom Trial Order, arguing that the court abused its discretion in ordering the parties to proceed to a trial conducted via Zoom. (Opening Br. 10.) In support of this general allegation of error, Alle argues several reasons for why the bankruptcy court erred. Alle claims that the bankruptcy court could not have determined the credibility of remotely testifying witnesses and a Zoom trial restricts the party's ability to communicate with his attorney. (*Id.* 9, 10.) Also, because testimony would not occur in the open courtroom, there is the risk that a witness would improperly rely on documents during his or her testimony, be impermissibly coached by a person outside of the view of the camera during trial, or even communicate via text or email with the attorney without the court's knowledge. (*Id.*) Alle also argues that a "Zoom trial (compared to a routine court hearing) deprived Appellant of the constitutional right to confront witnesses, due process of law and effective counsel." (*Id.* 11.) He additionally argues that the Zoom trial could be impacted by the unstable or inconsistent internet available to his counsel, with personal anecdotes of previous losses of internet connectivity as justification. (*Id.* 13.) Furthermore, low-quality internet will result in interruptions and disfunction and favor well-resourced large law firms with dedicated IT support over small firms and solo practitioners. (*Id.* 13–14, 16.) And again, Alle argues that, because his counsel would not be sitting next to him during trial, he would be denied effective assistance of counsel, violating his due process rights. (*Id.* 15.)

In conclusion, Alle argues that not only did the bankruptcy court abuse its direction in ordering the trial to proceed by Zoom, but it was also legal error to force Alle to appear via Zoom for the trial. (*Id.* 17.)

Appellants counter, *inter alia*, that Alle does not have a constitutional right to an in-person trial (Answering Br. 22, ECF No. 13), that a Zoom trial does not deprive

Alle of due process, (*id.* 23), and that other courts have held bench trials via Zoom-like technology, (*id.* 26).

Pursuant to Federal Rule of Civil Procedure 43(a), "[a]t trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise." The rule, however, also provides that "[f]or good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." Fed. R. Civ. P. 43(a). Accordingly, the decision to require testimony by videoconference falls within a court's discretion. *Draper v. Rosario*, 836 F.3d 1072, 1081 (9th Cir. 2016); s*ee Thomas v. Anderson*, 912 F.3d 971, 977 (7th Cir. 2018) ("[U]nder Rule 43(a), the judge has discretion to allow live testimony by video for 'good cause in compelling circumstances and with appropriate safeguards.'" (quoting Fed. R. Civ. P. 43(a))), *cert. denied*, 140 S.Ct. 533 (2019). Moreover, a court's discretion is augmented by its "wide latitude in determining the manner in which evidence is to be presented" under the Federal Rules of Evidence. *Parkhurst v. Belt*, 567 F.3d 995, 1002 (8th Cir. 2009) (citing Fed. R. Evid. 611(a)).

As an initial matter, Alle's effort to impose in a civil case the requirements of the Sixth Amendment, where a defendant enjoys the protection of the Confrontation Clause, is inapt. *See Austin v. United States*, 509 U.S. 602, 608 (1993) ("The protections provided by the Sixth Amendment are explicitly confined to criminal prosecutions." (quotation omitted)). The Federal Rules of Civil Procedure control here and Rule 43 plainly permits a court to permit testimony in open court by contemporaneous transmission from a different location "[f]or good cause in compelling circumstances and with appropriate safeguards." Fed. R. Civ. P. 43(a).

Here, the bankruptcy court, acting in good cause in light of the compelling circumstances created by the COVID-19 pandemic, developed the appropriate safeguards as required by Rule 43(a).

### 1. *Good Cause in Compelling Circumstances*

The bankruptcy court did not abuse its discretion in finding there was good cause in compelling circumstances sufficient to order the trial to proceed by remote means. Specifically, the bankruptcy court noted it was operating under the restrictions imposed by the U.S. Bankruptcy Court for the Central District of California's General Order 20-06. (AER 3:30.) This Order instructed the bankruptcy court that there would be "no in person hearings . . . held in any matter, until further notice" and "Judges will continue to hear matters remotely through telephonic or by video service." (*Id.* (citing General Order 20-06).) The General Order was issued in response to the surge of COVID-19 cases in California during the summer of 2020. The Court also acknowledged, that as of the summer of 2020, "[t]here is currently 'no known cure, no effective treatment, and no vaccine' for COVID-19." (*Id.* (quoting *South Bay United Pentecostal Church v. Newsom*, 140 S.Ct. 1613, 1613 (2020) (Roberts, C.J., concurring))).

In finding that the COVID-19 pandemic was good cause in compelling circumstances, the bankruptcy court implied its decision was not an outlier, but that courts across the country have ordered remote trials. (AER 3:31 (citing, *inter alia*, *Gould Elecs. Inc. v. Livingston Cty. Rd. Comm'n*, 2020 WL 3717792 (E.D. Mich. June 30, 2020); *Vitamins Online, Inc. v. Heartwise, Inc.*, 2020 WL 3452872 (D. Utah June 24, 2020); *Argonaut Inc. Co. v. Manetta Enters.*, 2020 WL 3104033 (E.D.N.Y June 11, 2020)).) In further support of its ruling that good cause existed, the bankruptcy court highlighted that the adversary proceeding was approximately 6 1/2 years old at the time of the Zoom Trial Order and that it was "unknown when the courthouse will reopen for ordinary operations." (AER 3:30.)

The bankruptcy court's exercise of discretion continues to be well-founded—since the bankruptcy court entered its Zoom Trial Order in August 2020, several more Ninth Circuit district courts have also entered similar orders. *See, e.g., Julian Liu v. State Farm Mut. Auto. Ins. Co.*, No. CV 2:18-1862-BJR, 2020 WL 8465987, at *2 (W.D. Wash. Dec. 17, 2020) (finding that good cause and compelling circumstances

existed because COVID-19 was a public health emergency); *see also Bao Xuyen Le v. Reverend Dr. Martin Luther King, Jr. Cty.*, No. C18-55 TSZ, 2021 WL 859493, at *2–3 (W.D. Wash. Mar. 8, 2021) (same); *Goldstine v. FedEx Freight Inc.*, No. C18-1164 MJP, 2021 WL 952354, at *10 (W.D. Wash. Mar. 11, 2021) (same); *Cramton v. Grabbagreen Franchising LLC*, No. CV-17-04663-PHX-DWL, 2020 WL 8620346, at *2 (D. Ariz. Nov. 13, 2020) (same) (collecting cases).

In summary, the bankruptcy court did not abuse its discretion in finding good cause in compelling circumstances to support the Zoom Trial Order. *Draper*, 836 F.3d at 1081.

### 2.  *Appropriate Safeguards*

Next, the Court considers whether the bankruptcy court abused its discretion in finding or fashioning "appropriate safeguards" as contemplated by Rule 43(a). The Court holds the bankruptcy court did not.

Rule 43(a)'s requirement that testimony occur in open court serves two purposes: (1) to ensure that the witness testimony may be tested by cross-examination, and (2) to allow the trier of fact to observe the demeanor of the witness. *In re Adair*, 965 F.2d 777, 780 (9th Cir. 1992) (citing *Carter-Wallace, Inc. v. Otte*, 474 F.2d 529, 536 (2d Cir. 1972)). The bankruptcy court acknowledged these dual requirements in its Zoom Trial Order, stating "an order will be entered before trial providing instructions to all parties regarding numerous issues." (AER 3:31.) On September 30, 2020, the bankruptcy court issued that order, requiring, for example, that all parties would use the same court-provided blue background; that all witnesses must be visible from the waist up; and documents, notes, and electronic devices were forbidden in the room from which the witness was testifying. (*See* AER 24:96–399.) Furthermore, the bankruptcy court scheduled a pretrial testing conference two weeks prior to the set trial date in order to ensure each party's access and functionality. (AER 24:397.)

In this Zoom Trial Order the bankruptcy court impliedly responded to several of Alle's arguments against proceeding remotely, *supra*. For example, the bankruptcy court incorporated safeguards against the "potential coaching of witnesses."

9

(AER 3:31.) It also directly rejected the argument that Alle could not effectively cross-examine via video, calling that argument "unfounded." (AER 3:32 (citing *Centripetal Networks, Inc. v. Cisco Sys., Inc.*, 2020 WL 3411385 (E.D. Va. Apr. 23, 2020)).)

As above, other courts have continued to fashion similar and adequate safeguards in response to the COVID-19 pandemic. *See, e.g.*, *Liu*, 2020 WL 8465987, at *3 ("This Court will not make [defendant] wait . . . until it is safe to resume in-person civil jury trials, particularly when it is possible to conduct a remote jury trial in a manner that ameliorates each of Defendant's objections and satisfies Rules 77(b) and 43(a)."). And courts have found safeguards similar to those emplaced by the bankruptcy court sufficient. *Aoki v. Gilbert*, 11-cv-02797-TLN-CKD, 2019 WL 1243719, at *2 (E.D. Cal. Mar. 18, 2019) ("Especially in light of the fact that this is a bench trial, the Court foresees no issues with determining witness credibility, or with the logistics and timing of presenting and cross-examining the various witnesses by video."); *Warner v. Cate*, 12-cv-1146-LJO-MJS, 2015 WL 4645019, at *1 (E.D. Cal. Aug. 4, 2015) ("Appropriate safeguards exist where the opposing party's ability to conduct cross-examination is not impaired, the witness testifies under oath in open court, and the witness's credibility can be assessed adequately.").

Accordingly, this Court holds that the bankruptcy court did not abuse its discretion in finding adequate safeguards to proceed at a remote trial. *Draper*, 836 F.3d at 1081.

Thus, because the bankruptcy court found good cause and developed adequate safeguards, it did not abuse its discretion in ordering the trial to proceed by Zoom. Therefore, the Court **AFFIRMS** the bankruptcy court's Zoom Trial Order.

**B.     Appellees Were Not Required to Prove Every Element**

Alle's second assignment of error is that the bankruptcy court erred when it did not require "Appellees to prove, at trial, each element of each cause of action." (Opening Br. 17.) Although discordant and at times repetitive, the Court reads Alle's Opening Brief as making two broad arguments. First, the bankruptcy court committed

legal error by misconstruing the prior BAP Appeal Judgment in order to limit the triable issues. (*See, e.g., id.* 18–19.) Second, the bankruptcy court abused its discretion by not finding an exception to the "law of the case" doctrine. (*See, e.g., id.* 20.)

In essence, to resolve Alle's arguments the Court must determine whether the rule of mandate or exceptions to the law of the case controlled the bankruptcy court's ability to preclude certain issues from being re-litigated at the trial. They did not.

### 1. *Rule of Mandate*

The Court can dispose of Alle's arguments against Claims One and Three by applying the rule of mandate.

"The rule of mandate is similar to, but broader than, the law of the case doctrine." *United States v. Cote,* 51 F.3d 178, 181 (9th Cir. 1995). Under the "rule of mandate," on remand, a trial court cannot vary or examine the appellate court's mandate for any purpose other than executing it. *Stacy v. Colvin*, 825 F.3d 563, 568 (9th Cir. 2016). On remand, a lower court's actions must be "consistent with both the letter and the spirit of the higher court's decision." *Ischay v. Barnhart*, 383 F. Supp. 2d 1199, 1214 (C.D. Cal. 2005) (citations omitted). But the rule of mandate does not preclude a trial court from deciding anything not foreclosed by the mandate. *Stacy*, 825 F.3d at 568. In other words, it "leaves to the [lower] court any issue not expressly or impliedly disposed of on appeal." *Nguyen v. United States,* 792 F.2d 1500, 1502 (9th Cir. 1986) (citation omitted). Violation of the rule of mandate is a jurisdictional error and is reviewed de novo. *United States v. Thrasher,* 483 F.3d 977, 982 (9th Cir. 2007).

#### a. *Claim One: Defalcation under § 523(a)(4)*

Under Section 523(a)(4), to prevail under a defalcation theory, the party must demonstrate that: 1) an express or technical trust existed, 2) the debt was caused by fraud or defalcation, and 3) the debtor acted as a fiduciary to the creditor at the time the debt was created. *In re Bigelow*, 271 B.R. 178, 186 (B.A.P. 9th Cir. 2001).

In the MSJ Ruling, the bankruptcy court granted summary judgment on Claim One for Defalcation. (AER 34:521.) The BAP panel affirmed the bankruptcy court's findings that: 1) a technical trust existed under California law, 2) Alle acted as a fiduciary to Appellees, and 3) Alle breached his fiduciary duties to Appellees by failing to provide Appellees with appropriate income and expense reports regarding SMP and by misappropriating SMP's funds. (AER 37:571–74.)

But, the BAP reversed the bankruptcy court's determination that Alle's debt was caused by fraud or defalcation. (AER 37:574–79.) Specifically, because § 523(a)(4) defalcation requires "a culpable state of mind involving either bad faith, moral turpitude or an intentional wrong," the bankruptcy court erred when it made no findings whether Alle possessed the "requisite state of mind" to commit fraud or defalcation. (*Id.*) Additionally, the BAP ruled that the "bankruptcy court did not make sufficient findings to support the amount of damages awarded" and therefore "should make findings as to the proper measure of damages under California law and the facts of this case." (AER 37:580, 582.) Ultimately, the BAP remanded the case "for further proceedings in accordance with this disposition." (AER 37:582.)

Thus, the Panel's holdings that a trust existed, that Alle was a fiduciary to Appellees, and that he breached that duty disposed of those elements, and the bankruptcy court was expressly precluded from reconsidering those matters on remand. *United States v. Miller*, 822 F.2d 828, 832 (9th Cir. 1987) (internal citations omitted).

Therefore, the bankruptcy court did not commit legal error when it denied Alle's Mandate Relief Motion to require Appellees to prove all elements of Claim One. The Court **AFFIRMS** the bankruptcy court ruling under the rule of mandate and, thus, does not reach the law of the case argument. *In re Warren*, 568 F.3d at 1116 (affirming a bankruptcy court's decision "on any ground fairly supported by the record").

      b.  *Claim Two: Fraud under § 523(a)(2)(A)*

On appeal, the BAP Panel was not confronted with any issues stemming from Claim Two, and thus the BAP Appeal Judgment is silent as to this claim. Because there was no mandate from a higher court, the rule of mandate is inapplicable. *See, e.g.*, *Stacey v. Colvin*, 825 F.3d 563, 568 (9th Cir. 2016) (noting courts may consider any matter on remand that was not expressly or implicitly decided on appeal). The bankruptcy court properly did not apply the rule of mandate, nor shall this Court.

      c.  *Claim Three: Embezzlement under § 523(a)(4)*

Embezzlement under Section 523(a)(4) requires proof of three elements: 1) property rightfully in the possession of the nonowner debtor, 2) the nonowner's misappropriation of the property to a use other than that for which it was entrusted, and 3) circumstances indicating fraud. *In re Littleton*, 942 F.2d 551, 555 (9th Cir. 1991). A finding that a defendant misappropriated the plaintiff's property creates damages in the amount of the misappropriated property. *In re Booher*, 284 B.R. 181, 214 (Bankr. W.D. Pa. 2002) (noting that damages for embezzlement are generally equal to the value of the misappropriated property).

In the MSJ Ruling, the bankruptcy court found that Appellees had satisfied all of the elements of embezzlement under § 523(a)(4), determining that 1) Alle was rightfully in possession of SMP's funds, and based on Appellees' membership interests in SMP, Appellees' funds, 2) Alle misappropriated those funds, and 3) the circumstances surrounding Alle's use of SMP's funds indicated fraud. (AER 34:526–27.) Based on those findings, the bankruptcy court granted summary judgment in favor of the Appellees and entered judgment on Claim Three for $800,000 in damages. (AER 34:485.)

On appeal, the BAP Panel did not agree with the amount of damages the bankruptcy court awarded because the bankruptcy court "did not award damages in the amount of the embezzled funds," with the Panel writing "it is not clear how the embezzlement claim could have been the basis for the $800,000 damage award" and

"[a]ccordingly, the bankruptcy court erred in entering judgment on Plaintiffs' embezzlement claim." (AER 37:580.) But the BAP Appeal Judgment does not state that the bankruptcy court erred in finding that the elements of embezzlement had been proven. (*Id.*) And thus, the mandate from the BAP was limited, only stating that "on remand, the bankruptcy court should make findings as to the proper measure of damages under California law and the facts of this case." (AER 37:582.)

In its Mandate Order denying Alle's Mandate Relief Motion to force Appellees to prove all of the elements, the bankruptcy court correctly read the BAP Appeal Judgment mandate. (AER 38:593.) The mandate required the bankruptcy court to make findings only regarding the proper amount of damages under the Embezzlement Claim, implicitly affirming that all of the claim's elements had been satisfied. Therefore, based on the mandate, the bankruptcy court was precluded from considering any issued regarding Claim Three other than damages. *Miller*, 822 F.2d at 832 (prohibiting lower courts from reviewing issues on remand that were implicitly decided on appeal).

Because the bankruptcy court could only require those issues not disposed of by the BAP Appeal Judgment to be proven at trial, the bankruptcy court did not err when it denied Alle's Mandate Relief Motion. The Court **AFFIRMS** the bankruptcy court's Mandate Order ruling under the rule of mandate and, thus, does not reach the law of the case argument. *In re Warren*, 568 F.3d at 1116.

### 2. Law of the Case Doctrine

Because the BAP Appeal Judgment was silent as to Claim Two, the bankruptcy court necessarily analyzed Alle's Mandate Relief Motion under the law of the case doctrine. (AER 38:599–600.)

The law of the case doctrine, a judicial invention, aims to promote the efficient operation of the courts. *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990). It generally precludes a court from reconsidering an issue decided previously by the same court or by a higher court in the identical case. *United States v.*

*Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000). The issue in question must have been decided explicitly or by necessary implication in the previous disposition. *Id.* The doctrine serves to advance the "principle that in order to maintain consistency during the course of a single lawsuit, reconsideration of legal questions previously decided should be avoided." *United States v. Houser*, 804 F.2d 565, 567 (9th Cir. 1986). Application of the doctrine is discretionary. Appellate courts therefore review the lower court's decision for abuse of discretion. *See Milgard Tempering,* 902 F.2d at 715. Here, the bankruptcy court did not abuse its discretion.

Although the bankruptcy court's prior MSJ Ruling was the law of the case, the Ninth Circuit has recognized that a court can "depart from the law of the case . . . in limited circumstances." *Malaney v. UAL Corp.*, 552 F. App'x 698, 700 (9th Cir. 2014) (citing *Ingle v. Circuit City*, 408 F.3d 592, 594 (9th Cir. 2005)). "A court [has] discretion to depart from the law of the case where: (1) the first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) the evidence on remand is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result." *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997). "Failure to apply the doctrine of the law of the case absent one of the requisite conditions constitutes an abuse of discretion." *Id.*

In denying Alle's Mandate Relief Motion, the bankruptcy court, in its Mandate Order, *sua sponte* considered the law of the case doctrine and its exceptions, and correctly rejected each exception. (AER 38:600.) The bankruptcy court first noted that neither Alle nor Appellees addressed whether the law of the case doctrine applied to the bankruptcy court's ruling considering Claim Two, but the bankruptcy court then found that the doctrine did apply because it expressly decided those issues in the MSJ Ruling. (*Id.*) The bankruptcy court then found that Alle, in his Mandate Relief Motion, did not demonstrate that the bankruptcy court's findings regarding Claim Two were clearly erroneous, or that there had been an intervening change in the law that would retroactively affect the MSJ Ruling. (*Id.*) Nor did Alle submit substantially different

evidence, and in fact, the bankruptcy court reviewed all of the evidence Alle did submit to support his Mandate Relief Motion, finding that Alle didn't show that the evidence was unavailable to him prior to the bankruptcy court's MSJ Ruling. (*Id.*; AER 38:597.) The bankruptcy court also rejected Alle's arguments that because he now had counsel his circumstances were changed. (AER 38:600.) Finally, the bankruptcy court found that Alle had provided no evidence that he would suffer manifest injustice if it adhered to its rulings regarding Claim Two. (*Id.*)

Before this Court, Alle argues the bankruptcy court erroneously failed to find that an exception to the law of the case existed; specifically that Alle had insufficient time to review the bankruptcy court's tentative ruling on the MSJ, and now that Alle has had more time to respond and can provide additional details to explain the "inappropriate or unnecessary expenses for SMP" it would be manifest injustice to not revisit the judgment. (Opening Br. 20.) But this is the same argument based on the same facts that was presented to, and rejected by, the bankruptcy court in its Mandate Order denying the Mandate Relief Motion. (*See* AER 38:600.) Nothing Alle has provided on appeal shows the bankruptcy court abused its discretion.

In sum, this Court holds that the bankruptcy court did not abuse its discretion by abiding by the law of the case in the absence of an exception, and **AFFIRMS** the bankruptcy court's Mandate Order denying Alle's Mandate Relief Motion as to Claim Two.

**C.     Judgment Was Proper**

In his final argument on appeal, Alle argues that the Judgment entered by the bankruptcy court following the trial is error. (Opening Br. 21.) Dedicating only thirteen lines of the twenty-two page brief to this issue, Alle argues that because the bankruptcy court wrongly did not force Appellees to prove every element at trial, and then wrongly ordered the trial to proceed remotely, it necessarily follows that the Judgment is a "fruit of the poison tree" and this Court should vacate and reverse the Judgment, and order a trial in person. (*Id.*)

Because this Court affirmed both the bankruptcy court's Zoom Trial Order and its Mandate Order, Alle's final argument logically fails.

### IV. CONCLUSION

The Court **AFFIRMS** the decisions of the bankruptcy court. The Clerk is directed to close the case.

**IT IS SO ORDERED.**

Dated: July 19, 2021

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE

cc: Bankruptcy Court